[L. A. No. 10433. In Bank.—November 10, 1928.]

THE SOUTHERN SIERRAS POWER COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Henry W. Coil, Newman Jones and H. M. Hammack for Petitioner.

Carl I. Wheat, Reginald L. Vaughan and Roderick B. Cassidy for Respondents.

TYLER, J., *pro tem.* — *Mandamus* against the Railroad Commission to compel it to issue its permit for the issuance of certain stock. Petitioner, a Wyoming corporation, is now, and since November, 1911, has been engaged in generating, transmitting, and distributing electrical energy in this state. It is a public utility electrical corporation as defined by section 23 of article XII of the constitution and section 2 of the Public Utilities Act of the state of California (Stats. 1911 [Ex. Sess.], p. 18, as amended). Although a foreign corporation, it is operating lawfully in this state, since it has been engaged in doing business therein prior to March 23, 1912, the date when the Public Utilities Act became effective. Petitioner is authorized by its certificate of incorporation obtained from the state of Wyoming to issue $5,000,000 common stock, and also a like amount of seven per cent preferred stock. The common stock was all issued prior to the effective date of the Public Utilities Act. The company being desirous of issuing $2,000,000 of its preferred stock for the refunding or payment of its outstanding indebtedness applied to the Railroad Commission to authorize such issue under section 52 of the Public Utilities Act. The application was in due form and included all the necessary facts required by law and the rules and regulations of the Commission. That body declined its permit upon the ground that it possessed no jurisdiction over the issuance of stock by a foreign corporation. An application for rehearing was asked for and denied and the writ of mandate here applied for is sought to compel the Railroad Commission to exercise its alleged jurisdiction and to hear and determine petitioner's application. The sole question here involved, therefore, is whether or not the Railroad Commission has authority to authorize a foreign corporation, operating a public utility, to issue its capital stock. Petitioner claims that section 52 of the Public Utilities Act, making the authorization of the Commission a prerequisite to the issuance of stock by a public utility, is applicable to foreign and domestic corporations alike. It is respondents' position that the issuance of stock in a corporation is essentially an internal function thereof, cognizable and regulatable only under the laws of the state or nation creating the corporation. We are of a like opinion. Section 52 of the Public Utilities Act (amended, Stats. 1925, p. 817) provides, in

part, that the power of public utilities to issue stocks and stock certificates or other evidence of interest or ownership, and bonds, notes, and other evidence of indebtedness, and to create liens on their property, situated within the state, is a special privilege, the right of supervision and regulation over which is vested in the state to be exercised by the Railroad Commission under such rules and regulations as it may prescribe. The purposes for which said securities may be issued are definitely set forth, and it is declared that all such securities issued without the authority of the Railroad Commission shall be void, and penalties are provided for violations of its provisions. While the language employed in the section is broad and comprehensive and makes no distinction in express terms between foreign and domestic corporations, it was never intended thereby to subject foreign corporations to regulation concerning the exercise of the inherent corporate powers conferred upon them by the legislative power of the incorporating state. Whether or not the term ''corporation,'' when used in a statute, applies to foreign corporations operating within the state depends largely upon the subject matter of the statute, its policy, and the context in which the terms are employed. ▉ A statute of a state granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the state and over which it has the power of visitation and control. (14a C. J., p. 1241.) While the legislature has the power to dictate under what terms and conditions foreign corporations may transact business in this state, this power does not extend so far as to give the legislature the power to regulate or control the *intra vires* acts of such corporations concerning their internal affairs. Over such matters it has no power of control. (*Miles* v. *Woodward,* 115 Cal. 308–311 [46 Pac. 1076]; *Commonwealth Acceptance Corp.* v. *Jordan,* 198 Cal. 618, 630 [246 Pac. 796]; 8 Fletcher's Cyc. of Corp., sec. 5807; *Guilford* v. *Western Union Tel. Co.,* 59 Minn. 332 [50 Am. St. Rep. 407, 61 N. W. 324]; Beach on Foreign Corporations, sec. 307.) Nor does the fact that a foreign corporation engaged in business within the state is within the jurisdiction of the state courts in suits against it upon its contracts or for fraud practiced in the operation of its business subject it to legislation pur-

porting to regulate the exercise of its inherent powers. (*Application of Ostrander,* 206 App. Div. 362 [201 N. Y. Supp. 423].)     For the same reason courts will refuse to exercise visitatorial powers over foreign corporations, or interfere with the management of their strictly internal affairs. (*National Guarantee Credit Corp.* v. *Worth & Co.,* 274 Pa. St. 148 [117 Atl. 914]; *Travis* v. *Knox etc. Co.,* 215 N. Y. 259 [Ann. Cas. 1917A, 387, L. R. A. 1916A, 542, 109 N. E. 250]; *Howell* v. *Chicago & N. W. R. Co.,* 51 Barb. (N. Y.) 378; *In re Fryeburg Water Co.,* 79 N. H. 123 [18 A. L. R. 1373, 106 Atl. 225].)   Such matters must be settled by the courts of the state creating the corporation. This rule rests upon a broader and deeper foundation than the mere want of jurisdiction in the ordinary sense of that word. It involves the extent of the authority of the state over foreign corporations. (*Guilford* v. *Western Union Tel. Co.,* 59 Minn. 332 [50 Am. St. Rep. 407, 61 N. W. 324].)     While the term "internal affairs" is more or less indefinite, there can be no question but that the issuance of stock by a corporation is purely an internal affair, and to entertain an action to compel its issuance would clearly constitute the exercise of visitatorial powers over the corporation, or an interference with the management of its internal affairs. (*Idem.*) From the very nature of corporate stock, which is created by and under the authority of a state, the right or duty to issue it, like the other attributes of the corporation, is governed by the local laws of the state from which it derives its existence, and not by that of any other state. (*In re Fryeburg Water Co.,* 79 N. H. 123 [18 A. L. R. 1373, 106 Atl. 225].)   The Fryeburg case is on all-fours with the present one.   There a foreign corporation doing business in the state of New Hampshire sought to compel the commission to issue certain stock which was authorized by the corporation's home state. It was there held that the issuing of the stock is a corporate act which is regulated and controlled by the laws of the incorporating state, for the reason that it relates to the internal conduct and management of the corporation. (See, also, *Commonwealth Acceptance Corp.* v. *Jordan, supra.*)     For the reasons stated the application before the Railroad Commission to issue the stock in question was properly denied. It

follows that the writ here sought should, for like reasons, be denied and the matter discharged.

It is so ordered.

Waste, C. J., Richards, J., Shenk, J., Curtis, J., Seawell, J., and Preston, J., concurred.